PIERCE, Chief Judge.
Appellant Beach National Bank, plaintiff in the lower Court (hereinafter Beach) appeals to this Court from an order dismissing Beach’s amended complaint filed against appellees, The Bank of Hollywood *252 Hills (hereinafter Hollywood) and Richard and Grace Grimaldi, defendants below.
Beach is a national bank located at Fort Myers Beach. Hollywood is a state bank located at Hollywood, Florida. On April 8, 1969, the Grimaldis opened a joint checking account with Beach, pursuant to an “agreement” signed by the Grimaldis which will be more fully discussed hereinafter.
On May 16, 1969, Hollywood issued and delivered to the Grimaldis a cashier’s check payable to the Grimaldis in the sum of $2,000. On May 19, 1969, Richard Grimal-di, as a joint payee endorsed the check “Grace Grimaldi by Richard Grimaldi”. Beach thereupon cashed it and paid the full amount to Grimaldi, either at that time or shortly thereafter. On or about May 20, 1969, the cashier’s check routinely arrived at Hollywood for payment. Hollywood, however, refused to honor the check and returned it to Beach unpaid because it did not contain the personal endorsements of both the Grimaldis.
Beach sued Hollywood in a five count complaint. The first count avers substantially the foregoing facts and contended that by the terms of the original “contract” between the parties Grace had authorized her husband Richard to endorse her name on the check as her agent, and that Beach had no notice of any change or modification of such authority at the time they cashed the check; that Beach, therefore, “is the owner and holder in due course of said cashier’s check and has a security interest therein”.
The second and succeeding counts reav-erred the same facts, and contended variously that Hollywood held the funds represented by the check under a constructive trust for Beach; that Hollywood “negligently failed to abide by reasonable commercial banking standards in its refusal to pay said check”; that when Richard endorsed the check as aforesaid and then either cashed it immediately or temporarily deposited it before converting it into cash, “thereby entered into a contract of endorsement” with Beach by which he became obligated to pay the sum represented thereby “in the event of an unjustified refusal to pay on the part of” Hollywood; that Hollywood refused to pay the check to Beach because Grace had “issued a stop payment order” to Hollywood, which she was without authority to do because of her “contract” of April 8, 1969.
Hollywood moved to dismiss the complaint on the ground that the counts applicable to it showed that the check was improperly endorsed because not bearing the endorsement of both Grace and Richard.
The Court granted the motion to dismiss, and upon failure of Beach to amend within the time allowed, dismissed the case against Hollywood. Beach appeals to this Court and argues that under the facts set up in the amended complaint Beach should be indemnified by Hollywood for the amount of the check. Hollywood has not seen fit to file brief in this Court setting forth its contentions, but it is obvious from the pleadings and the rulings of the trial Court that it is Hollywood’s position that Beach in its amended complaint failed to state a cause of action. We agree and affirm.
Wading through the maze of immaterial and irrelevant contentions and averments made by Beach, the one simple fact remains which is decisive of this case, viz: the cashier’s check was Hollywood’s order to pay, not the Grimaldis or either of them; and Hollywood had control of that check until it was honored and paid by Hollywood, which payment could not lawfully be enforced until endorsed by both the Grimaldis as joint payees.
Mrs. Grimaldi had no authority to stop payment on the check because it was not her check. Hollywood could stop payment on the check but Mrs. Grimaldi could not. And Hollywood, in effect, did stop payment because it refused to honor the payment made by Beach to Richard.
*253 The cashier’s check was made payable to “Richard Grimaldi and Grace Grimaldi”. The only endorsement it bore when it was presented by Grimaldi to Beach and paid by Beach was the notation on the back “Grace Grimaldi by Richard Grimaldi”. Grimaldi himself never did endorse the check individually for himself. And yet Beach cashed the check and gave the entire proceeds of $2,000 to Grimaldi. The most the bank could have done — and this at best would have been gratuitous to the Grimaldis — would have been to let the check be a deposit into the Grimaldis’ joint checking account and then hold or freeze the deposit until either the proper endorsements were furnished or the check otherwise would be paid by Hollywood upon its arriving there.
Beach argues that the “deposit contract” (so-called perhaps for want of a better name) constituted some sort of authorization to Richard to sign Grace’s endorsement. But such contention is patently untenable by a consideration of the “contract” itself. Nowhere is such carte blanche authority given. A copy of the “contract”, both front and back, was attached to the complaint as a part thereof, and for enlightenment is set forth in the margin herein.[1]
*254 In the transcribed argument before the trial Judge at the hearing upon Hollywood’s motion to dismiss, counsel for Beach seemed to take the position that the Grimaldis would have been entitled to the proceeds from the check even without any endorsement at all. Of course, such contention is untenable, especially in the light of all our banking statutes. Even a cashier’s check made to bearer would have to be endorsed by the recipient of the proceeds.
It all boils down to what we originally said herein, that the cashier’s check bore the names of two payees, and both payees had to endorse the check in order to hold the drawer bank, Hollywood, legally responsible for payment.
Accordingly, the order or judgment dismissing Beach’s suit is—
Affirmed.
HOBSON, J., concurs.
MANN, J., concurs in part, dissents in part.

.
[On the face] “JOINT ACCOUNT FORM BK-17 ACCOUNT NO. NAMES 003 853 RICHARD or GRACE GRIMALDI SAY. REG. SPEC, x
TO BEACH NATIONAL BANK, PORT MYERS BEACH, FLORIDA

You are authorized to recognize any of the signatures subscribed below in the payment of funds or the transactions of any business for this account. It is agreed that all transactions between you and the undersigned shall be governed by the contract printed on the reverse side of this card.
The undersigned, joint depositors, hereby agree each with the other and with you that all sums now on deposit, or heretofore deposited by any of said joint depositors with you to their credit as such joint depositors with all accumulations thereon, are and shall be owned by. them as joint tenants with right of survivorship and not as tenants in common, and be subject to the check or receipt of any of them or the survivor(s) of them and payment to or on the check or receipt of any or the survivor(s) shall be valid and discharge you from liability.
Each of the undersigned appoints the other (s) their attorney, with power to deposit in said joint account, moneys of the other (s) and for that purpose to endorse any check, draft, note or other instrument payable to the order of the other (s) and or any said joint depositors.
Payment to or on check or receipt of the survivor(s) shall be subject to all applicable statutes and regulations.
Signature Grace Grimaldi
Signature Richard Grimaldi
Signature Mailing Address
Residence Address 253 Ohio St. Ft. Myers Beach, Fla. 33931
Date Opened 4-8-69 closed 5-19-69
Opened by ab “EXHIBIT “A”
[On the back]
DEPOSITORS CONTRACT
Items received for deposit or collection are accepted on the following terms and conditions. This bank acts only as depositor’s collecting agent and assumes no responsibility beyond its exercise of due care.’ All items are credited subject to final payment and to receipt of proceeds of final payment in cash or solvent cred *254 its by this bank at its own office. This bank may forward items to correspondents and shall not be liable for default or negligence of correspondents selected with due care nor losses in transit, and each correspondent shall not be liable except for its own negligence. Items and their proceeds may be handled by any Federal Reserve bank in accordance with applicable Federal Reserve rules and regulations, and by this bank or any correspondent, in accordance with any common bank usage, with any practice or procedure that a Federal Reserve bank may use or permit another bank to use, or with any, other lawful means. This bank may charge back, at any, time prior to midnight on its busines, (sic) day next following the day of receipt, any item drawn on this bank which is ascertained to be drawn against insufficient funds or otherwise not good or payable. An item received after this bank’s regular afternoon closing hour shall be deemed to have been received the next business day.
It is agreed that this account, whether active or dormant (a checking account shall be considered dormant when no deposit shall have been made or checks or receipts drawn for a period of one (1) year and in the case of savings accounts, the period is five (5) years. The crediting of interest to a savings account does not constitute a deposit), shall be subject to such service and maintenance charges heretofore adopted by this bank and now in effect, and to such service and maintenance charges as may hereafter be adopted by this bank without notice to depositors.
This bank accepts no responsibility for payment of checks which are presented the same day deposits are made, unless there is already sufficient collected balance to the depositors credit in addition to such deposits. Deposits are not posted to accounts until after regular banking hours on the day they are received by this bank.
This bank is authorized to mail statements and cancelled checks to the last address known to this bank.